**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

AMBER KRASNY,

Plaintiff,

v.

AT&T CORPORATION,

Defendant.

Case No.: 0:24cv61244

Removed from the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Case No. CACE-24-007790

# AT&T Corporation's Notice of Removal

Defendant AT&T Corporation removes this action currently pending in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida, to the United States District Court for the Southern District of Florida, Fort Lauderdale Division, on the grounds that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

## NATURE OF REMOVED ACTION

1) On March 30, 2024, AT&T announced that AT&T-specific data fields were contained in a data set released online approximately two weeks before. AT&T shared its determination with regulators and the public, took precautionary measures, and began notifying customers. As of July 14, 2024, over 60 related putative class actions have been filed against AT&T and its related entities, in 12 federal district courts in 8 states in connection with the incident. The putative class plaintiffs in each action purport to represent all individuals whose information was

allegedly impacted by the incident, and allege AT&T failed to safeguard personal information in violation of common law, contracts, and consumer protection statutes.

2) On April 2, 2024, one of the plaintiffs moved the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate pending federal court actions in multidistrict litigation ("MDL") in the Northern District of Texas. *See In re AT&T Inc. Customer Data Security Breach Litigation*, JPML No. 3114, ECF No. 1 (Apr. 2, 2024). On June 5, 2024, the JPML issued a Transfer Order consolidating actions relating to the data incident on the grounds that centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. The JPML assigned the consolidated proceeding to Judge Ada E. Brown in the Northern District of Texas and broadly noted that "any other related actions" are potential tag-along actions pursuant to the JPML Rules. *See In re AT&T Inc. Customer Data Security Breach Litigation*, JPML No. 3114, ECF No. 139 (June 5, 2024).

3) Plaintiff Amber Krasny commenced this action against AT&T Corporation in the Circuit Court in and for Broward County, Florida, Case No. CACE-24-007790 (the "State Court Action") seeking a declaratory judgment related to the data incident. Specifically, Ms. Krasny seeks a declaration regarding "[her] status as a victim of a data breach, the specific information which was leaked and/or accessed by unauthorized third parties, and the date and method of the data breach, so that Plaintiff can properly exercise rights enjoyed under the Fair Credit

Reporting Act, 15 U.S.C. 1681, *et seq*., as well as take independent measures to safeguard against identity theft, rebut fraudulent use of the Sensitive Information, and file a detailed police report with local authorities." A true and accurate copy of the Complaint in the State Court Action is attached hereto as **Exhibit A**.

4) These claims are like those already filed across the country against AT&T—including several brought by Florida citizens and in federal courts in Florida—and consolidated for coordinated proceedings in the Northern District of Texas.

5) Indeed, there are numerous previously-filed federal cases transferred to the MDL where Ms. Krasny is already a putative class member. For example, she is a putative class member in cases seeking to represent "nationwide" classes of those allegedly impacted by the incident. *See e.g.*, *Petroski v. AT&T Inc.*, Case No. 3:24-cv-00757 (N.D. Tex.), ECF 1 at ¶¶ 140, 153 (seeking damages and declaratory relief on behalf of a putative nationwide class of "[a]ll individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized party" as a result of the data incident); *Unruh v. AT&T Mobility LLC et al.*, Case No. 3:24-cv-1473 (N.D. Tex.), ECF 1 at ¶¶ 6, 7, 61, 89, 143 (declaratory judgment and statutory claims brought by Kansas and Florida citizens against AT&T Mobility LLC and AT&T Inc. on behalf of a putative nationwide class of "[a]ll individuals whose personal information was compromised" as a result the data incident); *Garner v. AT&T Inc.*, Case No. 3:24-cv-00962 (N.D. Tex.), ECF 1 at ¶¶ 21, 52, 53, 151 (declaratory judgment and statutory claims brought by a Florida citizen on behalf of

a nationwide putative class of "[a]ll natural persons in the United States whose Personally Identifiable Information was compromised" as a result of the data incident and also on behalf of a subclass of "[a]ll natural persons in the State of Florida whose Personally Identifiable Information was compromised" as a result of the data incident).

## GROUNDS FOR REMOVAL UNDER 28 U.S.C. § 1332(a)

6) Pursuant to 28 U.S.C. 1332(a), the Court has jurisdiction over this case because (1) there is complete diversity of citizenship between Ms. Krasny and AT&T Corporation; and (2) the amount in controversy exceeds $75,000, exclusive of interests and costs.

### A. Complete diversity exists.

7) For purposes of diversity jurisdiction, an individual is deemed a citizen of the state where he or she is domiciled. *See McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002). Ms. Krasny is a citizen of the state of Florida. Ex. A, Compl. ¶ 4.

8) Effective May 1, 2024, AT&T Corp. merged with and into AT&T Enterprises, Inc. On May 2, 2024, AT&T Enterprises, Inc. was converted into AT&T Enterprises, LLC—a Delaware limited liability company. "[A] limited liability company is deemed to be a citizen of any state of which any of its members is a citizen." *Blue Ridge Healthcare Mgmt., LLC v. Western World Ins. Co.*, 2020 WL 13356807, at *2 (S.D. Fla. Dec. 15, 2020).

9) The sole member of AT&T Enterprises, LLC is AT&T Wireline

Holdings, LLC. AT&T Wireline Holdings, LLC is a Delaware limited liability company, whose sole member is AT&T DW Holdings, Inc. AT&T DW Holdings, Inc. is a New York corporation with its principal place of business in Texas.

10) Based on the foregoing, AT&T Enterprises, LLC (formerly AT&T Corp.) is a citizen of the states of Texas and New York.

11) Thus, there is complete diversity between Ms. Krasny (Florida) and AT&T Corp. (Texas and New York).

**B. Amount in controversy is satisfied.**

12) An action may be removed if the defendant establishes, consistent with the pleading requirements of Civil Rule 8, that the aggregate amount in controversy, exclusive of interest and costs, exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). When a defendant seeks to remove an action to federal court on grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation should be accepted [as true] when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 87. This standard is appropriate even when the complaint fails to allege, or seeks, a specific amount of damages. *See NextPlat Corp. v. Seifert*, 2023 WL 4972827, at *3–4 (S.D. Fla. June 14, 2023) (citing *Dart Cherokee* and explaining that a "removing defendant satisfies [the amount-in-controversy] requirement by claiming a sufficient sum in good faith" despite plaintiff's complaint not pleading more than $75,000 at issue).

13) Here, Ms. Krasny seeks a declaration regarding the data incident so

that she "can properly exercise rights enjoyed under the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq*." and take measures to safeguard against identity theft. Ex. A, Compl. ¶¶ 19, 24.

14) "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Palacio v. Citi Mortg., Inc.*, 2013 WL 28276, at *1 (S.D. Fla. Jan. 2, 2013). Here, the value of the object of the litigation—which Ms. Krasny alleges to be the ability to seek relief under the Fair Credit Reporting Act— exceeds $75,000. Indeed, the Fair Credit Reporting Act provides for a recovery of actual damages, punitive damages, and attorney's fees. *See* 15 U.S.C. 1681(n), (o).

15) Ms. Krasny's attorney bills at a rate of $525/hour. *See Millan v. Receivable Management Grp. Inc.*, Case No. 6:22-cv-00197, ECF 21 (M.D. Fla. May 23, 2022). Ms. Krasny's attorney would have to bill only 163 hours to exceed the jurisdictional amount without even considering any actual or punitive damages. That number will be easily exceeded in this complex matter, which requires determination of duties allegedly owed by AT&T; whether those duties were breached in connection with a criminal cyberattack on AT&T; how the incident happened; whether plaintiff was impacted by the breach; and whether corrective actions were needed or adequate.

16) Therefore, there is complete diversity between Ms. Krasny and AT&T Corporation, and the amount in controversy exceeds $75,000. Thus, this Court has original jurisdiction and removal is proper pursuant to 28 U.S.C. § 1332(a).

**JURISDICTION PURSUANT TO PENDING CLASS ACTIONS**

17) This Court also has jurisdiction over Ms. Krasny's case because Ms. Krasny's claims are subsumed into cases related to the data incident that have already been consolidated into an MDL by the JPML. *See, e.g.*, *In re Kitec Plumbing Sys. Prods. Liab. Litig.*, 2010 WL 11618052, at *6 (N.D. Tex. Aug. 23, 2010) (courts may look past artificial limitations in plaintiff's pleadings where plaintiffs "are already properly before [the MDL] Court"); *see also Sanders v. Kia Am. Inc.*, 2023 WL 3974966, at *4–5 (C.D. Cal. June 13, 2023) (similar); *Simon v. Marriott Int'l, Inc.*, 2019 WL 4573415, at *4 (D. Md. Sept. 20, 2019) (similar).

18) For example, the lead case before the JPML, *Petroski v. AT&T Inc.*, Case No. 3:24-cv-00757 (N.D. Tex.), alleges a putative class of "[a]ll individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized party" as a result of the data incident. *Id.*, ECF No. 1, ¶ 140. The allegations in this case—and multiple others with the same or similar underlying allegations—are now consolidated in an MDL before Judge Ada Brown of the Northern District of Texas. *See, e.g.*, *Unruh v. AT&T Mobility LLC et al.*, Case No. 3:24-cv-1473 (N.D. Tex.), ECF 1 at ¶¶ 6, 7, 61, 89, 130, 143 (contract, unfair practices and declaratory judgment claims brought by Kansas and Florida citizens against AT&T Mobility LLC and AT&T Inc. on behalf of a putative nationwide class of "[a]ll individuals whose personal information was compromised" as a result the data incident); *Garner v. AT&T Inc.*, Case No. 3:24-cv-00962 (N.D. Tex.), ECF 1 at ¶¶ 21, 52, 53, 133, 155 (claims brought by a Florida citizen on behalf of a

nationwide putative class of "[a]ll natural persons in the United States whose Personally Identifiable Information was compromised" as a result of the data incident and also on behalf of a subclass of "[a]ll natural persons in the State of Florida whose Personally Identifiable Information was compromised" as a result of the data incident). Consequently, Mr. Krasny and her allegations are already subsumed within earlier filed federal cases pending in the MDL.

19) Pursuant to the Class Action Fairness Act ("CAFA"), where a proposed class involves 100 or more members, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A) and (d)(5).

20) CAFA is designed to create "efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court" and to place "the determination of more interstate class action lawsuits in the proper forum—the federal courts." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 408 (6th Cir. 2008) (quoting S. Rep. No. 109-14, at 5 (2005)). Indeed, CAFA was intended to "mak[e] it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction." *Id.*

21) "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81,

89 (2014). And where, as here, a plaintiff's claims are already subsumed within an existing MDL, courts have looked past artificial limitations in plaintiff's pleadings in finding federal jurisdiction.

22) For example, in *In re Kitec Plumbing Systems Products Liability Litigation*, 2010 WL 11618052 (N.D. Tex. Aug. 23, 2010), while an MDL involving allegedly defective HVAC pipe was proceeding in Texas, residents of two small communities in Washington filed actions in state court asserting the same claims. The Washington cases were removed and subsequently transferred to the MDL, where the removed plaintiffs sought to remand on the basis that CAFA's amount-in-controversy threshold was not met. Indeed, the removed plaintiffs had pled under the $5 million threshold by carving themselves out of a putative Washington class already pending before the MDL. But the *Kitec* court denied the motions to remand holding instead that it could "pierce the pleadings in order to determine the propriety of federal jurisdiction[,]" and look to the overlapping claims in the MDL class that were "already properly before this Court" in finding federal jurisdiction. *Id.* at *6.

23) The *Kitec* court further reasoned that allowing the removed plaintiffs to proceed in state court would erode the judicial efficiencies created by the MDL and undermine CAFA's aim of eliminating both gamesmanship and copycat actions. The court found that the MDL "implicates [the] multistate or national interests" that CAFA was designed to protect and that the removed actions threatened to "create duplicative, overlapping or even identical litigation to [the MDL] if they

were to be remanded." *Id.* at *7.

24) Similarly, in *Simon v. Marriott Int'l, Inc.*, 2019 WL 4573415 (D. Md. Sept. 20, 2019), plaintiffs brought claims arising out of a data breach incident in Connecticut state court despite an ongoing MDL proceeding addressing dozens of cases brought by plaintiffs nationwide regarding the same incident. To avoid diversity jurisdiction, the *Simon* plaintiffs pled that they intended to represent only a class of stateless individuals domiciled abroad. *Id.* at *1–2. But the Court found that there was "[no] legitimate basis for the need to litigate their claims separately from the MDL because of their geographic location" and to do so would mean plaintiffs "could recover from both their state court action and from the MDL." *Id.* at *4.

25) The *Simon* court further explained that "[t]he policy justifications for finding federal jurisdiction under CAFA even when it is absent on the face of the plaintiff's complaint, such as preventing inefficiency and 'ensuring federal court consideration of interstate cases of national importance,' hold even more true in the MDL context." *Id.* Indeed, "[t]he primary objective of an MDL is to promote the just and efficient conduct of actions that involve common questions of fact. This interest in fairness and efficiency is even stronger in the context of MDLs than in a stand-alone CAFA class action because MDLs combine multiple class (and individual) actions into one lawsuit for purposes of pretrial proceedings." *Id.* Thus, "[a]llowing the Simons to manipulate CAFA would be harmful here because it could disrupt the orderly progress of the pretrial process in the Marriott MDL." *Id.*

26) A similar result was reached in *Sanders v. Kia America, Inc.*, 2023 WL 3974966 (C.D. Cal. June 13, 2023). There, California residents filed a tort action on behalf of individual plaintiffs in California state court against a California car company regarding issues with anti-theft technology. The *Sanders* plaintiffs' claims were the same as those raised in a pending MDL proceeding created to centralize all litigation for suits by consumers who purchased or leased vehicles that lacked the anti-theft technology. Plaintiffs alleged there was not minimal diversity for removal purposes because both Plaintiffs and the car companies were California residents.

27) Citing *Simon*, the court disagreed, and "reach[ed] beyond the pleadings" to determine that minimal diversity existed because the *Sanders* plaintiffs were subsumed by a class in the MDL that contained non-California citizens. *Id.* at *5.

28) The *Sanders* court explained that, "[while] Plaintiffs are entitled to choose a state forum for their action by limiting the number of plaintiffs or the amount of recovery they seek[,] where there is actually no difference between th[e] action and the existing claims that are being pursued in a multidistrict litigation . . . this is exactly the type of case that CAFA envisioned as removable." *Id.* at *6.

29) This case is like *Kitec, Simon,* and *Sanders*. The incident allegedly impacted individuals nationwide and has resulted in over 60 suits raising the same types of claims, seeking the same types of relief, and seeking to represent classes that necessarily include Ms. Krasny's suit. Thus, the Court has jurisdiction under CAFA.

**A. There are more than 100 putative class members.**

30) CAFA provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

31) Here, Ms. Krasny's claims are subsumed by cases already pending before the MDL involving identical claims for relief on behalf of more than 100 putative class members *See e.g.*, *Petroski*, ECF 1 at ¶ 143 (data incident claims brought on behalf of a putative nationwide class of "over 70 million" individuals); *Unruh*, ECF 1 at ¶ 92 (contract, declaratory judgment and unfair practices claims brought on behalf of a putative nationwide class of "more than 73 million individuals").

**B. Minimal diversity exists.**

32) Under CAFA, diversity of citizenship exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

33) As explained above, there is complete diversity here because Ms. Krasny is a citizen of Florida, and AT&T Corp. is a citizen of New York and Texas.

**C. Amount-in-controversy is satisfied.**

34) Pursuant to CAFA, the complaint must put in controversy more than $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See* 28 U.S.C. § 1332(d)(6).

35) The amount-in-controversy requirement is satisfied for the same reason CAFA diversity and numerosity exist in this case. Because Ms. Krasny's suit related to the data incident is subsumed within numerous putative classes already in the MDL, the Court may look to these actions to evaluate the amount placed in controversy. *See, e.g.*, *Sanders*, 2023 WL 3974966, at *6 (aggregating claims of members in MDL class and case brought by individuals to reach CAFA amount-in-controversy); *see also Petroski*, ECF 1 at ¶ 19 (MDL case subsuming Plaintiff in its class definition and alleging the amount in controversy is over $5 million); *Unruh*, ECF 1 at 10 (same); *Garner*, ECF 1 at ¶ 9 (same).

* * *

36) Because Ms. Krasny's case is subsumed by numerous cases already pending in the MDL, the CAFA requirements for numerosity, diversity, and amount in controversy are easily met. Thus, removal is proper.

**VENUE IS PROPER**

37) This Court is in the judicial district and division embracing the place where Ms. Krasny filed the State Court Action and where it is pending. Specifically, the United States District Court for the Southern District of Florida embraces Broward County, Florida. *See* 28 U.S.C. §§ 1441, 1446.

**TIMELINESS OF REMOVAL**

1) AT&T Corporation has not yet been properly served with the Complaint. Indeed, the agent on whom Ms. Krasny attempted service sent Ms. Krasny's counsel a rejection of service letter. Attached hereto, and incorporated

herein as **Exhibit B**, is a true and correct copy of the state court docket.

2) Because AT&T Corporation has not yet been served, this Notice is timely. *See* 28 U.S.C. § 1446(b); *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999).

**NOTICE**

As required by 28 U.S.C. § 1446(d), AT&T Corporation is providing written notice of the filing of this Notice of Removal to Ms. Krasny and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court for the 17th Judicial Circuit in and for Broward County, Florida.

Dated: July 15, 2024

Respectfully submitted,

By: */s/ Yameel L. Mercado Robles*

Yameel L. Mercado Robles (1003897)
Baker & Hostetler LLP
200 South Orange Ave., Suite 2300
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
ymercadorobles@bakerlaw.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2024, a true and correct copy of the foregoing document was served via email and U.S. mail upon the following:

THOMAS PATTI, ESQ.
Florida Bar No. 118377
E-mail: Tom@pzlg.legal
PATTI ZABALETA LAW GROUP
110 SE 6th Street Suite 1732
Fort Lauderdale, Florida 33301

*Counsel for Plaintiff*

/s/ Yameel L. Mercado Robles
*Counsel for AT&T Corporation*